UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAROL KING LANDSCAPING
MAINTENANCE, INC., a Florida
corporation, d/b/a Beach
Road Wine Bar and Bistro and
AMERICA AT PLAY, INC., a
Florida corporation, d/b/a
Beach Road Wine Bar and
Bistro,

     Plaintiffs,

v.                                Case No: 2:19-cv-453-FtM-99NPM

PATRICK PIZZELLA, in his
official capacity as United
States Secretary of Labor,
MOLLY CONWAY, in her
official capacity as United
States Acting Assistant
Secretary of Labor,
Employment and Training
Administration, and THOMAS
DOWD, in his official
capacity as Deputy Assistant
Secretary of Labor,
Employment and Training
Administration,

     Defendants.

## **OPINION AND ORDER**

This matter comes before the Court on plaintiffs' Motion for Preliminary Injunction (Doc. #2) filed on July 1, 2019. Defendants filed a Response in Opposition (Doc. #21) on July 16, 2019, and plaintiffs filed a Reply (Doc. #24) on August 1, 2019.[1]

---

[1] The Court previously denied the portion of the Motion

In its Response to the Preliminary Injunction Motion (Doc. #21), defendants raised the issue of standing, and on September 3, 2019 filed a Motion to Dismiss for Lack of Jurisdiction on this basis (Doc. #35). Plaintiffs filed a Response in Opposition and Exhibit (Docs. ##36, 37) on September 17, 2019.[2] For the reasons set forth below, the case is dismissed without prejudice for lack of jurisdiction.

## I. Background

Plaintiffs are small business owners and employers claiming that defendants exceeded their authority under the Administrative Procedures Act (APA) to implement a lottery selection process for reviewing applications filed by employers seeking temporary employment of foreign workers with H-2B visas. (Doc. #1.) On March 4, 2019, the Department of Labor (DOL) issued a Notice in the Federal Register announcing the lottery selection process entitled "Selection Procedures for Reviewing Applications Filed by Employers Seeking Temporary Employment of H-2B Foreign Workers in the United States." 84 Fed. Reg. 7399 (the "Notice") (Doc. #2-1.) The Notice announced that beginning on July 3, 2019, DOL would begin use a new lottery system to randomly select and process

---

requesting the entry of a temporary restraining order. (Doc. #10.)

[2] Plaintiffs also address defendants' standing argument in their Reply in Support of the Motion for Preliminary Injunction (Doc. #24), which the Court has considered.

applications for H-2B visas[3] filed within the first three (3) days of the season until the agency reaches the 33,000-worker cap set by the Department of Homeland Security (the "Lottery Selection"). DOL would thereafter process any remaining applications. The Notice invited public comment to be submitted by April 3, 2019. Public comments were received but were not published.

Plaintiffs challenge the Lottery Selection in a four-count Complaint (Doc. #1) under the APA and request that the Court issue a preliminary injunction to restrain the Lottery Selection from continuing and find that the Notice is invalid and enter an order vacating the Notice.

Some background on how the Lottery Selection process came to be is helpful here. Participation of the H-2B visa worker program has grown significantly over the years. As a result, prior to Lottery Selection, employer's H-2B visa applications were sequentially assigned based on the calendar date and time the applications were received, measured to the millisecond. Plaintiffs state that they would submit their applications on the first filing day at midnight to ensure control over their access to the H-2B program. Because of the high number of applicants

---

[3] The H-2B visa program (the "Program") allows for non-agricultural employers facing a shortage of U.S. employees to hire temporary seasonal, unskilled foreign employees. The Program is used predominantly by small businesses, including those involved in landscaping, hotel, construction, restaurant, and forestry. See 76 Fed. Reg. 15,130; 15,161.

that wanted to be first in line during the most recent filing period on January 1, 2019, the DOL's electronic filing system crashed. Thereafter, the DOL reassessed its procedures and developed the Lottery Selection process announced in the Notice.

On July 1, 2019 (two days before the Lottery Selection process was set to be implemented), plaintiffs sought an ex parte temporary restraining order from this Court to enjoin the Lottery Selection process from taking effect. (Doc. #2.) On July 2, 2019, the Court denied the portion of the Motion requesting the entry of a temporary restraining order and took the request for a preliminary injunction under advisement pending formal service and a response. (Doc. #10.)

The Government informs the Court that July 3, 2019 came and went without any application from plaintiffs for a temporary labor certification(s) (TLC), which is required before an H-2B visa can be issued to an employer. Thus, the Government argues that plaintiffs lack Article III standing to seek judicial review because plaintiffs have not suffered an actionable injury-in-fact and requests that the Court dismiss this action in its entirety on this basis.

Plaintiffs concede that Carol King Landscaping has not yet filed their requests for a TLC, but that America at Play applied and was granted 7 TLCs on September 9, 2019 (Doc. #37-1), but they nonetheless have standing to bring this suit because they have

suffered a procedural injury and will suffer a future injury when they file future TLC requests. (Doc. #24, pp. 2-4.) The Court has reviewed the Declarations of Bruce Bachand, Vice President of Carol King Landscaping Maintenance, Inc. (Doc. #1-2) and the Declaration of Jill M. Athans-Hemmes, owner of America at Play, Inc. (Doc. #1-3), who both assert that Lottery Selection will cause them to lose all control over access to the H-2B program and their businesses will suffer dramatically.[4] The Court has also reviewed the Declaration of Brian D. Pasternak from the Department of Labor, who is responsible for the Office of Foreign Labor Certification's adjudication of applications for labor certification required for temporary and permanent employment-based immigration. (Doc. #21-1.) Pasternak is familiar with the plaintiffs' past filing history for TLCs.

## II. Relevant Background of the H-2B Visa Program

The authority to administer the H–2B program is vested in the Department of Homeland Security (DHS) pursuant to section 1184(c) of the Immigration and Nationality Act (INA), which directs that "[t]he question of any alien as a nonimmigrant under 8 U.S.C. § 1101(a)(15)(H) shall be determined by the [DHS] after consultation with appropriate agencies of the Government, upon petition of the

---

[4] "While we typically confine our standing analysis to the four corners of the complaint, we may look beyond it when we have before us facts in the record." Corbett v. Transportation Sec. Admin., 930 F.3d 1225, 1232 (11th Cir. 2019).

importing employer." 8 U.S.C. § 1184(c)(1). The DHS has by regulation designated the DOL as the agency from which it seeks "advice" in determining whether to grant H-2B visa petitions. 8 C.F.R. § 214.2(h)(6)(iii). The DHS has also by regulation endowed the DOL with the authority to create the procedures necessary to fulfill its charge of issuing labor certifications.

The INA sets the annual number of aliens who may be issued H-2B visas or otherwise provided H-2B nonimmigrant status by the DHS to perform temporary non-agricultural work at 66,000, to be distributed semi-annually beginning in October and April. 8 U.S.C. § 1184(g)(1)(B). Up to 33,000 H-2B visas may be issued in the first half of a fiscal year (October 1 to March 31), and the remaining visas (33,000, or more if some are left over from the first semi-annual allocation) will be available for employers seeking to hire H-2B workers during the second half of the fiscal year (April 1 to September 30).[5]  8 U.S.C. § 1184(g)(10).

Because of the intense competition for H-2B visas in recent years, the semi-annual visa allocation, and the regulatory requirement that employers apply for a TLC 75 to 90 days before the start date of work, employers who wish to obtain visas for their workers under the semi-annual allotment for periods of need

---

[5] The Federal Government's fiscal year runs from October 1 of the budget's prior year through September 30 of the year being described. For example, fiscal year 2019 runs from October 1, 2018, through September 30, 2019.

from April 1 to September 30, 2018 must promptly apply for a TLC and then file a petition with USCIS before the cap is reached. As a result, OFLC typically experiences a significant "spike" in labor certification applications for temporary or seasonal jobs beginning in the early spring and summer. The fiscal cap, however, may be supplemented, and it has been in recent years. For example, in fiscal year 2019, the H-2B visa cap for the second half of the fiscal year was reached on February 29, 2019, but an additional 30,000 H-2B visas for the remainder of fiscal year 2019 were authorized by the Secretary of Homeland Security and the Secretary of Labor. 84 Fed. Reg. 20005. Increases also were announced for fiscal years 2017 and 2018. See 82 Fed. Reg. 32987 (2017); 83 Fed. Reg. 24905 (2018).

### III. Standing

**A. Standard**

Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction" J W by & through Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1264 (11th Cir. 2018), and the Eleventh Circuit has repeatedly held "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." Motions which raise mootness or the lack of standing attack the court's subject matter jurisdiction and are therefore considered pursuant to Rule 12(b)(1). Doe v. Pryor, 344 F.3d

1282, 1284 (11th Cir. 2003). Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint, and the court takes the allegations in the complaint as true in deciding the motion. Id. at 924 n.5. The complaint may be dismissed for a facial lack of standing only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa County, 21 F.3d 1531, 1536 n. 5 (11th Cir. 1994) (citation omitted).

When a court considers a Rule 12(b)(1) dismissal of a case on a factual challenge to subject matter jurisdiction (either for lack of standing or mootness), the court may consider facts outside the pleadings such as testimony and affidavits as long as the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. Morrison, 323 F.3d at 924-25; Goodman, 259 F.3d at 1331 n.6.

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Lujan v. Defs. of

Wildlife, 504 U.S. 555, 560-61 (1992)).  The party invoking federal jurisdiction (plaintiffs here) bears the burden of establishing these elements.  Id.

In cases such as this where the parties seek injunctive and declaratory relief, the injury-in-fact demanded by Article III requires an additional showing.  In addition to past injury, "a plaintiff must allege facts from which it appears there is a *substantial likelihood that he will suffer injury in the future*." Worthy v. City of Phenix City, Alabama, 930 F.3d 1206, 1215 (11th Cir. 2019) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999) (emphasis in original)).  In determining "whether a future injury is likely to occur, we consider whether the plaintiff is likely to have another encounter with a government officer due to the same conduct that caused the past injury."  JW, 914 F.3d at 1264.  Here, defendants raise only the injury-in-fact element - that is, plaintiffs must show a real and immediate threat of future injury.

Defendants appear to be making a purely facial attack on the Complaint, arguing that plaintiffs fail to sufficiently allege an injury-in-fact that would establish Article III standing to proceed as the Complaint makes no allegations that plaintiffs have actually submitted any TLCs for the DOL to process under its current Lottery Process.  Although defendant raise a facial attack on Article III standing, in determining whether the Court has

jurisdiction to entertain plaintiffs' claims, it may look beyond the four corners of the Complaint.  See Corbett v. Transportation Sec. Admin, 930 F.3d 1225, 1232 (11th Cir. 2019) ("While we typically confine our standing analysis to the four corners of the complaint, we may look beyond it when we have before us facts in the record.").  In this case, there are additional facts in the record.

In addition to Article III standing, because this case is brought pursuant to the Administrative Procedures Act (APA), a plaintiff must also demonstrate that it has prudential standing. Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488 (1988); 5 U.S.C. § 702.  That is, a plaintiff seeking judicial review pursuant to the APA must (i) identify some "final agency action" and (ii) demonstrate that its claims fall within the zone of interests protected by the statute forming the basis of its claims.  Lujan v. National Wildlife Fed., 497 U.S. 871, 882-83 (1990).  The Supreme Court has recognized that the "prudential branch of standing" is not derived from Article III. Lexmark Intern., Inc. v. Static Control Components, Inc., 572 U.S. 118, 126 (2014).

Here, plaintiffs allege that they have a valid past, present, and future injury; and the unlawful Notice creates a procedural injury pursuant to the APA that affects plaintiffs' concrete interests as regulated entities.  (Doc. #36, p. 2.)

**B. Injury in Fact - Constitutional Standing for Future Injury**

The Eleventh Circuit just this year discussed future injury for purposes of standing at length:

> In order to satisfy the injury-in-fact requirement of standing, a plaintiff may show that he "has sustained or is immediately in danger of sustaining some direct injury." Lynch v. Baxley, 744 F.2d 1452, 1456 (11th Cir. 1984) (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
>
> ....
>
> A plaintiff need not wait for an injury to occur, so long as he "is immediately in danger of sustaining some direct injury" as a result of the challenged official conduct and the injury or threat of injury is both "real and immediate," not "conjectural" or "hypothetical." Id. at 101–02, 103 S.Ct. 1660 (quotations omitted); see also Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("A threatened injury must be certainly impending to constitute injury in fact.") (quotations omitted); 31 Foster Children, 329 F.3d at 1266–67 (noting that standing for declaratory or injunctive relief requires that future injury "proceed with a high degree of immediacy").
>
> Immediacy requires that the anticipated injury occur within some fixed period of time in the future. Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1161 (11th Cir. 2008). "When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." 31 Foster Children, 329 F.3d at 1265. And even if the plaintiff shows immediacy, the injury must still be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural. Fla. State Conference of N.A.A.C.P., 522 F.3d at 1161; see also Bowen, 233 F.3d at 1340 (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

Corbett v. Transportation Sec. Admin., 930 F.3d 1225, 1232 (11th Cir. 2019).

The Corbett decision went on to examine past cases from both the Supreme Court and the Eleventh Circuit that explored the issue of when the likelihood of future injury was too speculative to support standing. Most instructive for our purposes is Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006). See Corbett, 930 F.3d at 1234. In that First Amendment case, protestors sought to enjoin the Government from taking similar action in the future, and they claimed to have standing because they "fully intend[ed] to peacefully express their viewpoints in the future in a manner similar to their activities on November 2, 2002 in concert with presidential appearances at the ... Sun Dome and at other locations around the country." Eland, 471 F.3d at 1204. In finding that plaintiffs lacked standing, the court stated that the plaintiffs' intention to protest in a similar manner in the future was too speculative because "[o]ther than the one instance in November 2002, we're not even given a description of Plaintiffs' past conduct from which to infer that they might act in a similar manner in the future," and thus it was "entirely conjectural that President Bush would return to speak at a political rally at the Sun Dome." Id. at 1209.

In examining the record for evidence concerning the likelihood of future harm, the Court reviews the Government's Declaration of Brian Pasternak, stating that in the past five years, Carol King Landscaping has submitted H-2B applications at the beginning of January for four of those five years.[6] By contrast, in the past five years, America at Play has only applied twice for H-2B visas (on September 15, 2017 and August 13, 2018)[7], and never in the month of January. (Doc. #21-1, ¶¶ 33-36.)

**1. America at Play**

Plaintiffs state that on September 9, 2019, America at Play d/b/a Beach Road Wine Bar and Bistro, was able to obtain a TLC for this upcoming season under the Lottery Selection process. (Doc. #37-1.) The Approval of H-2B Temporary Labor Certification (Doc. #37-1) shows that America at Play received certification for 7 workers with an employment begin date of November 1, 2019, and end date of May 1, 2020. Therefore, America at Play's claim of future injury is too speculative to rise to the level of substantial likelihood as required by Supreme Court and Eleventh Circuit case law. See Corbett, 930 F.3d at 1232. In other words, due to the

---

[6] And plaintiffs' Complaint also alleges that Carol King Landscaping files is application on January 1 to better ensure access to the Program. (Doc. #1, ¶ 10.)

[7] In contrast, the Complaint alleges that America at Play generally applies for workers on or about *July 3* of each year. (Doc. #1, ¶ 10.)

fact that America at Play received TLCs during the pendency of this case cuts against its substantial likelihood argument, and America at Play's request for a TLC has been infrequent enough that there is no likelihood of injury that is actual and imminent enough to support standing. See Corbett, 930 F.3d at 1236 (emphasis in original) (quoting Lujan, 504 U.S. 560) ("We recognize there's a chance that he might be selected in the future, based on the random selection process, but that is not enough under our case law to show a *substantial likelihood* of future injury that is real and immediate, actual and imminent, and not conjectural or hypothetical.).

Therefore, this case is dismissed for lack of standing as to America at Play because they have failed to show a substantial likelihood of future injury.

### 2. Carol King Landscaping

By contrast, Carol King Landscaping (to the Court's knowledge) has not yet submitted H-2B applications during the pendency of this case but states that it plans to apply at the beginning January. Indeed, Carol King has applied at the beginning of January for four of the last five years. (Doc. #21-1.) However, even assuming that Carol King Landscaping does apply for under the Lottery Selection process in January 2020, there is no indication (let alone a substantial likelihood) that Carol King would be injured. Indeed, America at Play *did* receive TLCs when

it applied, undercutting any argument that the Lottery Selection process forecloses plaintiffs' access to the program.

It is worth noting that as of July 5, 2019, the Government had received applications representing 12,098 worker positions for October 1, 2019 start dates. As this number is below the 33,000 slots allotted, plaintiffs state in their brief that the Lottery Selection process has not yet had the effect of actually depriving an applicant of a TLC. (Doc. #24, fn.3.) However, because the DOL conducts the lottery on a daily basis, plaintiffs believe that the Lottery Selection process will in fact deprive plaintiffs of a TLC when the number of applications exceeds the number of slots remaining. (Id.) Plaintiffs state it is *unclear when this will happen*, but it is all but certain to happen plaintiffs apply for TLCs during the pendency of this case. (Id.)

Therefore, this case is dismissed for lack of standing as to Carol King Landscaping because they have failed to show a substantial likelihood of future injury.

### C. Redressability

The more substantial standing issue, not raised by defendants, is the redressability prong of the constitutional standing requirements. In order for plaintiffs to show that they have standing, they must demonstrate that their alleged injury is redressable by a favorable ruling or decision. Clapper v. Amnesty Intern. USA, 568 U.S. 398, 409 (2013); Fla. Wildlife Fed'n, Inc.

v. South Fla. Water Mgmt. Dist., 647 F.3d 1296, 1303–04 (11th Cir. 2011). The Eleventh Circuit has stated that redressability is "one of the more amorphous requirements of modern standing doctrine." I.L. v. Alabama, 739 F.3d 1273, 1279 (11th Cir. 2014). As a general matter, however, "[r]edressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." Fla. Wildlife Fed'n, 647 F.3d at 1303–04 (quoting Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (11th Cir. 2010)). Here, even absent a court order, America at Play was able to obtain the TLCs that it desired, and plaintiffs have otherwise not demonstrated how a Court order directing the DOL to vacate the Notice would result in the DOL instituting different selection procedures that would result in plaintiffs ultimately receiving the TLCs that they desire. Thus, plaintiffs' claims are also due to be dismissed for lack of standing because they have failed to show redressability.

Because the Court has determined that plaintiffs have failed to establish Article III standing, it need not address whether plaintiffs would have prudential standing under the zone-of-interest test. Accordingly, the request for a preliminary injunction is denied as moot.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. #35) is **GRANTED.** Plaintiffs' Complaint (Doc. #1) is **dismissed without prejudice** for lack of subject-matter jurisdiction. The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

2. Plaintiffs' Motion for Preliminary Injunction (Doc. #2) is **denied as moot**.

**DONE and ORDERED** at Fort Myers, Florida, this __26th__ day of September, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record